## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MITCHELL PAYNE, individually and on behalf of M.D.P., a minor child,<br><br>     Plaintiff,<br><br>v.<br><br>1.  VIAN PUBLIC SCHOOLS, a Political Subdivision,<br>2.  VICTOR SALCEDO, Superintendent of Vian Public Schools, in his official and individual capacities,<br>3.  RICHARD MOSELEY, Principal of Vian High School, in his official and individual capacities, and<br>4.  DANIELLE BROCKMAN, a counselor at Vian Middle School, in her official and individual capacities,<br><br>     Defendants. | Case No. CIV-18-014-RAW |

## ORDER

Mitchell Payne ("Plaintiff") filed his Amended Complaint on behalf of himself and his daughter M.D.P. on February 19, 2018, bringing claims arising from an alleged sexual assault against M.D.P. The alleged assault occurred on or about May 5, 2016 during an overnight band trip by a then 16-year old high school student named P.A. against M.D.P. who was then 13 years old. Plaintiff includes six federal claims against Vian Public Schools, Victor Salcedo (the "Superintendent"), Richard Moseley (the "High School Principal"), and Danielle Brockman (the "Middle School Counselor") for their alleged actions and inactions following the alleged assault. Plaintiff includes one state law claim against Vian Public Schools for the alleged negligent acts

of its agents and employees in failing to supervise and protect M.D.P. during the overnight band trip.

Now before the court is Defendants' Motion for Summary Judgment [Docket No. 44]. For the reasons set forth below, the motion is granted as to the six federal claims. The court declines to exercise jurisdiction over the remaining state law claim.

Plaintiff's claims are as follows:

Claim I          Section 1983 claim for deprivation of federal civil rights against the Superintendent for failure to report the sexual assault to law enforcement, failure to fully investigate the allegations as required by Vian Public School policies, and failure to impose disciplinary actions as required by those policies.

Claim II         Section 1983 claim for conspiracy to deprive M.D.P. of federal civil rights against the Superintendent and the High School Principal for agreeing between themselves and other faculty members to: retaliate against M.D.P. for reporting the sexual assault against P.A.; minimize the conduct and its consequences by failing to properly investigate the allegations; not report the allegations to law enforcement; not enforce Vian Public School policies; and not comply with the requirements of Oklahoma State law.

Claim III        Section 1983 claim for deprivation of federal civil rights against the Middle School Counselor for informing M.D.P. and her parents that neither she nor other school officials would take any action against P.A. or keep him segregated from M.D.P. and that P.A. had "more rights" than M.D.P.

Claim IV       Title IX claim of deliberate indifference against Vian Public Schools for creating

               and/or subjecting M.D.P. to a hostile educational environment after the alleged

               assault in violation of 20 U.S.C. § 1681(a).

Claim V        Title IX claim against Vian Public Schools for retaliation by withholding

               protections otherwise conferred by Title IX.

Claim VI       Section 1983 claim based on *Monell* for failure to train and supervise as to how to

               respond to sexual assault against Vian Public Schools, the Superintendent, the

               High School Principal and the Middle School Counselor.  Plaintiff also alleges

               violation of M.D.P.'s rights under the Equal Protection Clause.

Claim VII      Claim pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA")

               against Vian Public Schools for negligence for the failure to provide adequate

               supervision and protection for M.D.P. during the overnight band trip.


## I.     STANDARD OF REVIEW

The court will grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The court's function is not "to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  In applying the summary judgment standard, the court

views the evidence and draws reasonable inferences therefrom in the light most favorable to the

nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir.

2006).  At this stage, however, Plaintiff may not rely on mere allegations, but must have set

forth, by affidavit or other evidence, specific facts in support of the Amended Complaint.  *Id.*

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

"A movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary." *Hall*, 935 F.2d at 1111, n. 5. Additionally, "the court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### *Qualified Immunity*

The affirmative defense of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant raises a qualified immunity defense in response to a motion to dismiss or a motion for summary judgment,[1] the burden shifts to the plaintiff and the court employs a two-part test. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012); *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). A plaintiff must show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Id.*

 "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citation omitted). A law is not clearly established unless existing precedent has "placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). This is an objective test. *Brown*, 662 F.3d at 1164. Furthermore, the court must not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft*, 563 U.S. at 742); *Knopf*, 884 F.3d at 944 (citing *Ashcroft*, 563 U.S. at 742). The "clearly established law must be 'particularized' to the facts of the case." *Knopf*, 884 F.3d at 944 (citation omitted).

A plaintiff must establish both prongs to defeat a qualified immunity defense. *Id.* Only if a plaintiff first meets this two-part test does the defendant bear the traditional summary judgment burden to show that there are no genuine disputes of material fact and that he or she is entitled to summary judgment as a matter of law. *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). The court has discretion to decide which of the two prongs to address first in light of the circumstances of the case. *Brown*, 662 F.3d at 1164.

---

[1] "The legally relevant factors for a qualified immunity decision will be different at the summary judgment state – no longer can the plaintiffs rest on facts as alleged in the pleadings." *Stonecipher v. Valles*, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).

## II.     UNDISPUTED MATERIAL FACTS[2]

Defendants listed sixty-two (62) "Undisputed Facts" in their summary judgment motion. Plaintiff does not dispute Defendants' facts numbered 1-7, 9-17, 20, 22, 24, 27, 29-42, 44-45, 47-48, and 50-62. *SJM*, Docket No. 44, at 1-15 and *Response to SJM*, Docket No. 51, at 8-10. The court hereby incorporates these by reference and accepts them as undisputed facts for purposes of the summary judgment motion. The court refers to these herein by "Undisputed Fact" number.

Plaintiff states that he disputes Defendants' "undisputed facts" numbered 8, 18, 19, 21, 23, 25, 26, 28, 43, 46, and 49. The court lists these and discusses Plaintiff's objections below.

8.     Prior to leaving on the band trip, Ms. Rhodes, the Band Director, provided the students with an information sheet about the trip. The sheet listed rules, including that "[c]urfew is 11:00 p.m. Be in your room at this time and do NOT leave your room. Room doors will be taped at 11:00." The Band Director also told the students that if they were in their room and needed assistance, they were to call her, and that if they left their room after curfew, there would be consequences. *M.D.P. Depo.*, Docket No. 44, Exh. 5, at 10, 30, and 34.

Plaintiff does not actually dispute these facts, but instead adds that there is no evidence that the doors were ever taped or that the chaperones checked the rooms during the night. M.D.P. was in her room at curfew when the chaperones checked rooms and voluntarily left her room thereafter in violation of the curfew. *Id*. at 12-13 and 15.

[2] For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

18.    On the morning of May 9, 2016, the Band Director notified the Middle School Counselor

that a student had reported that M.D.P. snuck out of her room on the band trip and went

to a high school boys' room where possible inappropriate contact occurred between

M.D.P. and P.A.  The Middle School Counselor then notified Ms. Oliver, the Middle

School Principal, of the report.  *Oliver Depo.*, Docket No. 44, Exh. 1, at 6; *Brockman*

*Depo*., Docket No. 44, Exh. 3, at 5-6.

Plaintiff does not actually dispute these facts, but adds that the Middle School

Counselor did not recall that she was told about the sexual activity, just that one of her

"middle schoolers had snuck out of her room and went to a high school room, a high

school boys' room."  *Brockman Depo*., Docket No. 44, Exh. 3, at 5-6.  Plaintiff also adds

that the High School Principal also told the Middle School Counselor that P.A. had

admitted the sexual activity.  *Oliver Depo.*, Docket No. 44, Exh. 1, at 8.

19.    The Middle School Counselor's role was to assist the Middle School Principal by

interviewing middle school students from the band trip who had information about the

allegations involving M.D.P. and P.A.  The Middle School Principal was in charge of

overseeing the investigation to its conclusion and M.D.P.'s discipline was her decision.

*Brockman Depo*., Docket No. 44, Exh. 3, at 13-14.

Again, Plaintiff does not actually dispute these facts, but adds that the school

policy requires that the Superintendent and/or the Principal *conduct* investigations.

Plaintiff cites to a Vian Public School Policy attached to the *Payne Depo.*, Docket No.

51, Exh. 11, at 15-17, but the citation does not support Plaintiff's proposition.  The Policy

states:

The district will promptly, thoroughly and impartially investigate all reports of
harassment and discrimination.  This process will include:

7

- A statement from the individual who was allegedly harassed;
- Appropriate and reasonable steps to separate and protect the alleged victim pending the conclusion of the investigation and necessary remedial action;
- Reasonable updates to the alleged victim of the investigation's progress, subject to federal and state laws and regulations;
- Interviews with the alleged harasser, alleged victim and witnesses; and
- Review of relevant documents, including district files and records.

The district will review all relevant facts and take into account the totality of the circumstances – including the nature, extent, context and gravity of the activities. At the conclusion of this process, the superintendent, in conjunction with the Title IX coordinator, will issue findings based on the preponderance of the evidence and take appropriate measures, including but not limited to: education, information available outside resources, training and counseling, transfer, suspension, and any other appropriate remedy under the circumstances. Employees may also be terminated for engaging in harassment, discrimination or retaliation.

*Id*. at 17. The Policy does not require that the Superintendent and/or the Principal *conduct* investigations. Nothing in the Policy precludes delegation of investigatory duties.

Defendants add, citing to undisputed facts, that the Middle School Principal was present for the interview of M.D.P. with the Middle School Counselor, met with Plaintiff, and decided M.D.P.'s punishment for violating curfew on the band trip.

21. The Band Director also notified the High School Principal of a possible incident on the band trip. The Band Director came to the High School Principal's office prior to school starting and reported that students were talking about possible inappropriate contact between P.A. and a middle school student. Once school started, the High School Principal called P.A. to his office and asked him what happened on the band trip. P.A. told the High School Principal: "M.D.P. … had come to the room after curfew and that they started rubbing on each other. And it carried over to where he had placed his hand or finger in her vagina and that she had also gave [*sic*] him a hand job." The High School

Principal immediately suspended P.A. for the remainder of the school year and called his mother to pick him up. *Moseley Depo.*, Docket No. 44, Exh. 2, at 5-6.

Plaintiff does not dispute these facts, but notes only that the Band Director may have called the High School Principal rather than going to his office. Whether she went to his office or called is immaterial.

23. The Middle School Principal told M.D.P. that because she left the room and violated band rules, the Band Director would not allow M.D.P. to attend the end of the year band trip, and it would be up to the Band Director whether M.D.P. could participate in band the next year. The Middle School Principal also told M.D.P. there would be consequences for her behavior. *Oliver Depo.*, Docket No. 44, Exh. 1, at 7.

Plaintiff argues that it is disputed whether M.D.P. was suspended from band for the following year as part of her punishment. *The Band Director's Notes*, Docket No. 51, Exh. 7, at 3. Plaintiff is incorrect. While the Band Director's notes mention the discussion of possible punishment, including "not being in band next year," it is undisputed that when the Middle School Principal and Plaintiff discussed options to accommodate and make M.D.P. feel comfortable, one *option* offered by the Middle School Principal was "not attending band." *Undisputed Fact No. 36*. There is no evidence M.D.P. was ever kicked out of band, only that she was not allowed to attend the end of year band trip. In fact, Plaintiff indicated he did not want M.D.P. in band, at least for the remainder of the school year. *Id.* The next year, M.D.P. chose not to take band. *Undisputed Fact No. 41*.

25. Prior to meeting with Plaintiff, the Middle School Principal learned additional information from the Middle School Counselor. The Middle School Counselor spoke to

a student about whether M.D.P. had left her phone in the boys' room prior to curfew. The student told the Middle School Counselor that M.D.P. had her phone the entire time and did not leave it in the boys' room. M.D.P. merely planned to use the phone as an excuse for going to the boys' room if she was caught out of her room by the Band Director. The Middle School Counselor also informed the Middle School Principal that the High School Principal had called and said P.A. admitted that he and M.D.P. engaged in inappropriate contact on the band trip. *Brockman Depo.*, Docket No. 44, Exh. 3, at 9.

Plaintiff adds that some students stated the phone was left in the room, while others stated the phone would be an excuse if M.D.P. was caught. Plaintiff then argues that based on this, it is disputed whether the Middle School Counselor was informed that M.D.P. was going to use her phone as an excuse. This does not follow. Plaintiff agrees that some students said M.D.P. used the phone as an excuse, while some said she did not. As she took the statements, the Middle School Counselor heard and/or read both stories. Nevertheless, this fact is not material to Plaintiff's claims, at least not to the federal claims.

26. Prior to Plaintiff arriving at the school, the High School Principal called the Middle School Principal to make certain she had received the information about his interview with P.A. and to tell her that he had suspended P.A. for the remainder of the school year. He also told the Middle School Principal that P.A. and one of the other boys believed M.D.P. was sixteen and held back twice, and that he believed the contact between the two was mutual. The Principals agreed that if both were willing participants, M.D.P. and P.A. should receive the same punishment. *Oliver Depo.*, Docket No. 44, Exh. 1, at 8; *Moseley Depo.*, Docket No. 44, Exh. 2, at 6-8.

Plaintiff adds only that M.D.P. was only 13 years of age, and her date of birth was reflected prominently on the suspension form.

28.	The Middle School Principal had discretion to determine the appropriate punishment for M.D.P.  She was not required to impose the same punishment as the High School Principal.  Although she initially intended to suspend M.D.P. for the remainder of the school year, which was nine days, she changed the suspension when Plaintiff pointed out that M.D.P. had denied any inappropriate contact with P.A.  The Middle School Principal suspended M.D.P. for three days because she admitted to violating curfew.  M.D.P. could return to school on Friday, May 13, 2016.  M.D.P. also would not be allowed to go on the end of the year band trip because she violated band policy.  *Oliver Depo.*, Docket No. 44, Exh. 1, at 8-11; *M.D.P. Depo.*, Docket No. 44, Exh. 5, at 31.

Plaintiff adds that the suspension form was not signed by the Middle School Principal until May 10, 2016 and that Plaintiff had called her later on May 9, 2016 to inform her that M.D.P. had admitted that P.A. forced himself on her.

Defendants add that Plaintiff was given a copy of the suspension form when he met with the Middle School Principal on May 9, 2016.  *Payne Depo.*, Docket No. 62, Exh. 1, at 4.  This was before Plaintiff called the Middle School Principal to inform her that M.D.P. had admitted that P.A. forced himself on her.  The form indicated that the 3-day suspension was for a violation of curfew.  *Id.*

43.	At the beginning of the 2016-2017 school year, Plaintiff met with the Middle School Counselor and the Middle School Principal in the Middle School Principal's office for approximately ten to fifteen minutes regarding M.D.P.'s return to school.  He remembers

the Middle School Principal saying she would check in on M.D.P. *Brockman Depo.*,
Docket No. 44, Exh. 3, at 11; *Payne Depo.*, Docket No. 51, Exh. 11, at 14.

Plaintiff adds that Plaintiff stated that the Middle School Counselor "always, in
every conversation, was always in the defense of [P.A.], and telling me that – talking
about my religious beliefs, my faith, books that I could read to help with M.D.P., and
basically telling us in this conversation that day that she, you know, M.D.P. has to make
better decisions and M.D.P. can't put herself in these positions." *Payne Depo.*, Docket
No. 51, Exh. 11, at 14.

46. At the suggestion of the Superintendent, the Middle School Counselor also met with
M.D.P. several times in her office during the fall of 2016 to make sure M.D.P. felt safe
and was doing okay. M.D.P. testified that the Middle School Counselor would ask how
she was doing and about her grades. *Brockman Depo.*, Docket No. 44, Exh. 3, at 10;
*Salcedo Depo.*, Docket No. 44, Exh. 4, at 14-15; *M.D.P. Depo.*, Docket No. 44, Exh. 5, at
27-28.

Plaintiff adds that with regard to the purpose of the meetings the Middle School
Counselor had with M.D.P., M.D.P. testified that she believed the Middle School
Counselor was trying to make accommodations for P.A. rather than for her and that she
felt like it was just a way for the Middle School Counselor to "get information" on her.[3]
*M.D.P. Depo.*, Docket No. 44, Exh. 5, at 27.

---

[3] The court notes that Plaintiff complains of a failure to investigate and at the same time
incongruously complains that the Middle School Counselor was trying to "get information" on
M.D.P. The Vian Public School Policy cited by Plaintiff requires, *inter alia*, interviews with the
alleged victim, reasonable updates to the alleged victim, and reasonable steps to separate and
protect the alleged victim. *Vian Public School Policy attach. to Payne Depo.*, Docket No. 51,
Exh. 11, at 15-17.

49.   M.D.P. reported to the Middle School Counselor that P.A. was looking at her in the hallways and making her feel uncomfortable.  The Middle School Counselor told M.D.P. that she had P.A. move his books to a different area so he would not be in the hallway. M.D.P. indicated there were no hand gestures or words spoken by the boys. The reports received in the fall of 2016 were directly from Plaintiff and were fully investigated by the Middle School Principal.  They were not reports from M.D.P.  *Oliver Dep*o., Docket No. 44, Exh. 1, at 22-23; *M.D.P. Depo*., Docket No. 44, Exh. 5, at 28.

Plaintiff disputes whether M.D.P. complained to school officials about her concerns with interacting with P.A. in the hallways.  Specifically, she testified that she told the Middle School Counselor "that he kept looking at [her] in the hallways, making [her] feel uncomfortable."  *M.D.P. Depo*., Docket No. 51, Exh. 9, at 2.  M.D.P. went on: "And then whenever I told her that, she told me that the only reason why I was in this position to begin with was because I put myself in bad situations, and that I needed to make smarter decisions."  *Id*.

Defendants add that M.D.P. admitted that the Middle School Counselor told her that she had P.A. "move where he was keeping his books" so that he would not pass M.D.P. in the hall.  *M.D.P. Depo*., Docket No. 44, Exh. 5, at 28.

In his Response to the Motion for Summary Judgment, Plaintiff lists eight (8) facts he argues are in dispute.  The court discusses those below.

1.   Plaintiff notes there is a fact dispute as to whether M.D.P. was sexually assaulted by P.A. Any such dispute is not relevant or material to the claims before the court.  Plaintiff's federal claims focus on the Defendants' *response to and investigation of* the alleged assault.

2. Plaintiff discusses whether the criminal case against P.A. was closed. Again, this is not relevant or material to Plaintiff's claims here. Plaintiff's federal claims focus on the Defendants' response to and investigation of the alleged assault.

3. P.A. admitted to the High School Principal that he engaged in sexual activity with M.D.P. *Moseley Depo.*, Docket No. 51, Exh. 3, at 8-12. The High School Principal did not determine whether such activity was illegal.

4.  Plaintiff's fourth fact is covered in undisputed fact numbered 18 above.

5. Plaintiff's fifth fact is covered in undisputed fact numbered 21 above.

6. M.D.P. was diagnosed with PTSD as a result of the alleged sexual assault by P.A. *Letter*, Docket No. 51, Exh. 8, at 2.

7. The overnight band trip was not arranged, organized, or scheduled by Vian Public School administrators, including the Superintendent and the Principals. The plans were not required to be approved by any supervising administrator. Defendants note that this statement is misleading to the extent is suggests there is no oversight of the band program and its chaperones. This fact would only be relevant to Plaintiff's state law claim.

8. It is the practice of Vian Public School to have chaperones on overnight trips. The High School Principal has no involvement in or knowledge of how the chaperones are educated or the guidelines they are supposed to follow. *Moseley Depo.*, Docket No. 51, Exh. 3, at 7. The Middle School Principal stated that she was not aware of any school policy with regard to the qualifications or number of chaperones. *Oliver Depo.*, Docket No. 51, Exh. 5, at 1. Again, this fact would only be relevant to Plaintiff's state law claim.

### III. FEDERAL CLAIMS

Plaintiff brings Title IX and § 1983 claims against Vian Public Schools.  Plaintiff brings § 1983 claims against the Superintendent, the High School Principal and the Middle School Counselor in both their official[4] and individual capacities.  The individual Defendants have asserted the defense of qualified immunity.

### A. Defendants' Proposition I – Claim IV

Plaintiff's fourth claim for relief is a Title IX claim against Vian Public Schools.  Plaintiff claims that following the assault, the school's deliberate indifference created and subjected M.D.P. to a hostile educational environment in violation of 20 U.S.C. § 1681(a).  Specifically, Plaintiff claims that Vian Public Schools and its officials had actual knowledge of the sexual assault, yet failed to report it to law enforcement and failed to investigate and to discipline P.A. in a timely manner consistent with its own policies and state law, which resulted in harassment of M.D.P. on the basis of her sex.  Plaintiff further claims that Vian Public Schools and its officials failed to promptly and appropriately respond and take effective, remedial steps to resolve the subsequent harassment.

Peer sexual harassment is actionable under Title IX if it is so severe as "to have the systemic effect of denying the victim equal access to an educational program or activity." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999).  A school district "may be liable under Title IX for its own conduct in being deliberately indifferent to student-on-student sexual harassment . . . provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the

---

[4] "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works."  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998).

educational benefits or opportunities provided by the school." *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008).

A school district's response to alleged harassment is deliberately indifferent only when it is "clearly unreasonable in light of the known circumstances." *Id*. at 1121. This standard does not require flawless investigations or perfect solutions. *Id*. at 1122. Moreover, schools are not required to "expel every student accused of sexual harassment to protect themselves from liability," and victims of peer harassment do not have a "Title IX right to make particular remedial demands." *Id*. at 1123.

To be clear, this claim is about Vian Public School officials' actions and inactions following the alleged sexual assault, not the alleged assault itself. As the undisputed facts show, viewing the evidence and drawing all reasonable inferences therefrom in the light most favorable to Plaintiff, Plaintiff has not established this claim.

On Monday, May 9, 2016, after the Band Director heard that M.D.P. had left her room after curfew, she informed Vian Public School officials, who began investigating. The Middle School Counselor interviewed the female students who shared a room with M.D.P. *Undisputed Fact No. 20*. The Middle School Counselor and the Middle School Principal interviewed M.D.P., who denied there had been any inappropriate contact between her and P.A. *Undisputed Fact No. 22*. The High School Principal interviewed P.A., who admitted to engaging in inappropriate contact with M.D.P. *Undisputed Fact No. 27*. The High School Principal immediately suspended P.A. for the remainder of the school year. *Undisputed Fact No. 21; Moseley Depo*., Docket No. 44, Exh. 2, at 5-6.

Once at home on Monday, May 9, 2009, M.D.P. admitted to her parents that she broke curfew, but denied that she and P.A. had any inappropriate contact. *Undisputed Fact No. 30*.

Eventually, however, she told her parents that P.A. inappropriately touched her and forced himself on her. *Id.* Plaintiff then called the Middle School Principal to inform her of M.D.P.'s allegation and told her that he planned to contact law enforcement and have someone at the school the next morning to arrest P.A. *Undisputed Fact No. 31.* Plaintiff contacted the police department that afternoon. *Undisputed Fact No. 32.*

Plaintiff argues that Vian Public School officials were required to report the alleged sexual assault by P.A. against M.D.P. Plaintiff cites to two Oklahoma statutes, one of which was in effect at the time of the actions and inactions upon which this case is based,[5] for this proposition. Plaintiff is incorrect. The statute states that "[e]very person having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect shall report the matter promptly to the Department of Human Services." 10A OKLA. STAT. § 1-2-101(B)(1). "Abuse," however, is defined as "harm or threatened harm to the health, safety, or welfare of a child *by a person responsible for the child's health, safety, or welfare*,[6] including, but not limited to nonaccidental or physical or mental injury, sexual abuse, or sexual exploitation." 10A OKLA. STAT. § 1-2-105(2) (emphasis added). P.A. was not a person responsible for M.D.P.'s health, safety, or welfare. The statute clearly does not require Defendants to report a student-on-student assault. *See also Campbell v. Hollis Indep. Sch. Dist.*

---

[5] As Defendants argue, 70 OKLA. STAT. § 1210.163 became effective on July 1, 2018.

[6] A "person responsible for a child's health, safety, or welfare" is defined as:

> a parent; a legal guardian; custodian; a foster parent; a person eighteen (18) years of age or older with whom the child's parent cohabitates or any other adult residing in the home of the child; an agent or employee of a public or private residential home, institution, facility or day treatment program as defined in Section 175.20 of Title 10 of the Oklahoma Statutes; or an owner, operator, or employee of a child care facility as defined by Section 402 of Title 10 of the Oklahoma Statutes[.]

10A OKLA. STAT. § 1-1-105(51).

*No. 66 of Harmon Cnty.*, No. CIV-15-343-C, 2017 WL 1102680, at *5-6 (W.D. Okla. March 23, 2017).

Moreover, as the following undisputed facts continue to show, Defendants' actions were unquestionably reasonable. Defendants did not contact the police or DHS, as M.D.P. initially denied any contact, as at times they had no firsthand knowledge, as they knew Plaintiff contacted police once M.D.P. made the allegation, and as they knew or believed DHS does not investigate student-on-student issues. *Undisputed Fact Nos. 60-62*.

On May 10, 2016, the Middle School Principal requested written statements from the students previously interviewed. *Undisputed Fact No. 35*. She also announced to all middle school teachers at a staff meeting that they should not talk about the incident, and if they heard students discussing it, they should stop them. *Id*.

On May 11, 2016, Plaintiff met with the Middle School Principal and discussed whether M.D.P. planned to return to school at the completion of her suspension. *Undisputed Fact No. 36*. The Middle School Principal offered Plaintiff options for M.D.P., including not attending band, arriving late, coming to the Principal's office, or going to the library. *Id*. If M.D.P. decided not to come to school, the Middle School Principal offered to freeze her grades and not count semester tests against her. *Id*. She made it clear to Plaintiff that she would work with him on whatever he felt was best for M.D.P. *Id*.

On May 11, 2016, the Superintendent called Plaintiff and told him he was sorry about what happened and to feel free to call him anytime. *Undisputed Fact No. 37*. The Superintendent spoke with Plaintiff again the following week with regard to a teacher's son who had indicated to M.D.P. that he did not want to be friends with her anymore. *Undisputed Fact*

*No. 38*.  Plaintiff believed the teacher broke confidentiality, but she told the Superintendent she had merely told her son not to communicate with M.D.P. and had told him nothing else.  *Id*.

Plaintiff was informed of P.A.'s suspension for the remainder of the school year. *Undisputed Fact No. 40*.  The only new information developed in the following months was from the police department, as school was out for the summer.  *Id*.  Prior to the start of school in the fall of 2016, the Middle School Principal and Counselor made certain through their schedules that M.D.P. and P.A. would have as little contact with one another as possible, *i.e.* to make sure they were not in the same areas at the same time, so M.D.P would feel safe.  *Undisputed Fact No. 42*.  The High School Principal also met with P.A. and told him to "stay clear" of M.D.P. *Undisputed Fact No. 44*.

The Middle School Principal and Counselor told M.D.P. their doors were open if she needed to talk or if she felt uncomfortable.  *Undisputed Fact No. 45*.  They also gave M.D.P. the option of leaving class early or late to avoid seeing P.A. in the halls, particularly for classes in the science building since the middle school and high school shared that building.  *Id*.  The Superintendent also told the Middle School Principal and Counselor that if anyone in M.D.P.'s class was harassing her, the student should be removed from the class and M.D.P. should remain in the class.  *Id*.

In October of 2016, Plaintiff reported to the Middle School Principal that P.A. and some of his friends were making throat slashing signs, pounding their chests, and flipping M.D.P. off in the hallway of the science building.  *Undisputed Fact No. 47*.  The Middle School Principal reviewed the video surveillance cameras in the area and could not find that any such conduct occurred.  *Id*.  The video actually revealed that the boys were trying to avoid M.D.P. and not

look at her.  *Id*.  Nevertheless, the Middle School Principal requested the teachers watch closely, and if they saw anything inappropriate happening, to report it.  *Id*.

The High School Principal was notified by the Middle School Principal on two occasions during the fall of 2016 that P.A. and a friend were possibly bullying or harassing M.D.P. *Undisputed Fact No. 48*.  The High School Principal called the boys to his office and they denied acting inappropriately toward M.D.P.  *Id*.  He reviewed video camera footage from the reported area at the reported time in an attempt to confirm M.D.P.'s complaints, but the footage did not confirm her complaints.  *Id*.

In the spring of 2017, M.D.P. told the Middle School Principal that she was not comfortable being in the cafeteria during a band concert because P.A. was in the band.  The Middle School Principal told M.D.P. she could stay in her office during the concert.  *Undisputed Fact No. 50*.  On the day P.A. was arrested in February of 2017, the Middle School Principal and Counselor had M.D.P. come to the Principal's office, and they called Plaintiff.  *Undisputed Fact No. 51*.  P.A. did not return to school after his arrest.  *Undisputed Fact No. 52*.  After P.A.'s arrest, the Middle School Principal again made an announcement to staff about confidentiality and not letting students discuss M.D.P. and P.A.  *Undisputed Fact No. 53*.

The Middle School Principal never refused to take Plaintiff's calls and always responded to his questions and calls.  *Undisputed Fact No. 54*.  Every time the Middle School Principal received a report, she investigated it.  *Id*.  M.D.P. testified she never suffered from any type of sexual harassment by P.A. after May 9, 2016.  *Undisputed Fact No. 56*.  M.D.P.'s grades did not fall during the time of the alleged peer harassment; she remained an A and B student.  *Undisputed Fact No. 58*.

The undisputed facts show that Vian Public School officials took immediate action in response to each and every allegation of harassment and took reasonable measures in light of the known circumstances in order to ensure M.D.P. felt safe and was not harassed. Vian Public School officials were not deliberately indifferent to any of Plaintiff's or M.D.P.'s allegations. M.D.P. was not deprived of access to the educational benefits and opportunities provided by the school.

The court takes into account Plaintiff's opinion that in his conversations with the Middle School Counselor, she was "in the defense of" P.A., and that she suggested books he could read to help M.D.P. and said M.D.P. has to make better decisions and not put herself in bad situations. The court also takes into account M.D.P.'s opinion that in meeting with her, the Middle School Counselor was just trying to "get information on her" and trying to make accommodations for P.A. rather than her. The Middle School Counselor told M.D.P. that she put herself in a bad situation with P.A. and needed to make smarter decisions.

In counseling a young girl who left her room voluntarily to go to a boys' room after curfew and spend the night, it is unquestionably reasonable that a counselor might mention she make better decisions in the future to help keep her safe. Even if were not, such a statement to her and her father does not create a question of fact as to whether the Middle School Counselor was harassing or shaming M.D.P. or otherwise not taking reasonable steps to help her, nor does it overcome the numerous other steps the Middle School Counselor took to protect M.D.P. and make her feel safe. There is no evidence that any Vian Public School official harassed or shamed M.D.P. In fact, the evidence before the court overwhelmingly shows that Vian Public School officials took reasonable steps to accommodate M.D.P., to try make her feel safe, and to prevent and stop any harassment, including keeping the students and teachers from even talking

about M.D.P. and P.A.  There also is no evidence that any Vian Public School official tried to make any accommodations for P.A., much less to the detriment of M.D.P.  Plaintiff's and M.D.P.'s unsupported opinions alone do not create an issue of material fact.  Defendants' motion is granted as to this claim.

   B. **Defendants' Proposition II – Claim V**

Plaintiff's fifth claim for relief is a Title IX claim against Vian Public Schools for retaliation by withholding protections otherwise conferred by Title IX.  Plaintiff alleges that because he involved law enforcement, Vian Public School officials retaliated by declining to investigate the matter or comply with their responsibilities as mandated by Title IX.

Plaintiff alleges that "[i]mmediately after Plaintiff advised Defendant Salcedo of the sexual violent attack, he discouraged her parents from referring the matter to law enforcement for criminal investigation."  Docket No. 21, at 24.  The undisputed facts, however, show that Plaintiff advised the Middle School Principal, not the Superintendent, of the alleged sexual assault.  Plaintiff did not speak to the Superintendent until two days after Plaintiff had already contacted the police.

Moreover, as is clear from the undisputed facts, especially those already discussed herein, Vian Public School officials investigated what happened in the room between P.A. and M.D.P. They also took reasonable steps to deter and stop any harassment and to try to make M.D.P. feel safe.  On at least two occasions, they viewed video surveillance footage in an attempt to confirm M.D.P.'s complaints about peer harassment, but the footage did not confirm her complaints. Teachers were then directed to watch closely and report anything inappropriate happening. Teachers were informed that if any student harassed M.D.P., that student was to be removed

from the class, not M.D.P. Additionally, there is no evidence M.D.P. was ever harassed by any Vian Public School official. Defendants' motion is granted as to this claim.

## C. **Defendants' Proposition III – Claim VI**

Plaintiff's sixth claim for relief is a § 1983 claim against all Defendants based on *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) for failure to train and supervise as to how to respond to sexual assault. Municipalities will not be held liable under a theory of *respondeat superior*, but under *Monell*, may be held liable "when the enforcement of their policies or customs by their employees causes a deprivation of a person's federally protected rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010).

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law' "; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted). Plaintiff here alleges the fifth form – failure to adequately train or supervise employees. Plaintiff's claim fails, as there was no constitutional deprivation and as there is no evidence of a policy or custom through failure to adequately train or supervise employees to respond to sexual harassment.

Plaintiff alleges that Defendants failed to investigate once informed of the sexual assault; failed to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects; failed to take steps to protect M.D.P.; and failed to report the alleged assault to law enforcement. The court has already held above that the undisputed facts overwhelmingly

show that Defendants took reasonable steps in investigating allegations and keeping M.D.P. safe. Plaintiff reported the alleged assault to law enforcement. Defendants were reasonable in not reporting it and were not required to do so.

Plaintiff argues that the Superintendent's delegation of his duty to investigate and remedy the issues that arose from the alleged sexual assault constitutes deliberate indifference. As the court held above, the undisputed facts overwhelmingly show that the High School Principal, the Middle School Principal, and the Middle School Counselor immediately investigated each allegation, and took reasonable steps to prevent and stop any harassment, and took reasonable steps to keep M.D.P. safe and make her feel safe. They reported to and kept the Superintendent informed. The Superintendent was not deliberately indifferent in allowing the Principals and the Middle School Counselor to do their jobs. Defendants' motion is granted as to this claim.

**Equal Protection Claim**

Plaintiff alleges Defendants violated M.D.P.'s rights under the Equal Protection Clause of the Fourteenth Amendment. To establish this claim, Plaintiff must show a custom or policy of deliberate indifference to sexual harassment. *Murrell v. School Dist. No. 1, Denver, Colo*., 186 F.3d 1249 (10th Cir. 1999). Plaintiff has not shown such a custom or policy. Plaintiff also has not, as Defendants argue, shown that any Defendant intentionally discriminated against M.D.P. on the basis of her gender. Again, Plaintiff's and M.D.P.'s unsupported feelings or opinions about Vian Public School officials' motivations are not sufficient evidence to raise a genuine issue of material fact, and the Middle School Counselor telling Plaintiff and M.D.P. that she needs to make better decisions in the future does not amount to harassment, shaming, or a constitutional violation. Again, Defendants investigated each allegation, they took reasonable

steps to prevent and stop any harassment, and they took reasonable steps to keep M.D.P. safe and to make her feel safe. Defendants' motion is granted as to this claim.

**Qualified Immunity**

Defendants in their individual capacities have asserted the defense of qualified immunity. As the court has already ruled that no constitutional violation occurred, Defendants are entitled to qualified immunity. Even if a constitutional violation could be found, Plaintiff has failed to show that it was clearly established. Plaintiff's only argument with regard to a clearly established constitutional rights is that 70 OKLA. STAT. § 1210 and 10A OKLA. STAT. § 1-2-101 impose a clear statutory duty to report abuse. As the court recognized above, 70 OKLA. STAT. § 1210 was not effective until July 1, 2018, and 10A OKLA. STAT. § 1-2-101 does not impose a duty on Defendants to report student-on-student harassment.

**D. Defendants' Proposition IV – Claims I and III**

Plaintiff's first and third claim for relief are § 1983 claims against the Superintendent and the Middle School Counselor in their individual capacities. Defendants have asserted and are entitled to qualified immunity. "[A] governmental official or employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." *Murrell*, 186 F.3d at 1250.

Plaintiff claims the Superintendent was deliberately indifferent when he failed to report the sexual assault to law enforcement, failed to fully investigate the allegations as required by Vian Public School policies, and failed to impose disciplinary actions against P.A. as required by those policies. As the court has ruled above and as the undisputed facts discussed herein show, the Superintendent's actions and inactions were not deliberately indifferent. M.D.P.'s

constitutional rights were not violated.  Moreover, Plaintiff has failed to show a violation of a clearly established right.

Plaintiff claims the Middle School Counselor was deliberately indifferent when she informed M.D.P. and her parents that neither she nor other school officials would take any action against P.A. or keep him segregated from M.D.P. and that P.A. had "more rights" than M.D.P. There is no evidence to establish any of this.  In fact, the evidence shows that P.A. was disciplined, that the Middle School Counselor and both Principals attempted to keep P.A. away from M.D.P., including allowing M.D.P. to leave classes early or late and to skip a school assembly when P.A. was playing in the band.  M.D.P.'s constitutional rights were not violated. Moreover, Plaintiff has failed to show a violation of a clearly established right.  Defendants' motion is granted as to these claims.

### E. **Defendants' Proposition V – Claim II**

Plaintiff's second claim for relief is a § 1983 claim against the Superintendent and the High School Principal for conspiracy to deprive M.D.P. of her federal civil rights.  Plaintiff alleges they agreed between themselves and other faculty members to: retaliate against M.D.P. for reporting the sexual assault against P.A.; minimize the conduct and its consequences by failing to properly investigate the allegations; not report the allegations to law enforcement; not enforce Vian Public School policies; and not comply with the requirements of Oklahoma State law.

Plaintiff has presented no evidence to support this claim.  There is no evidence of a conspiracy or that any Defendant retaliated against M.D.P.  The undisputed facts overwhelmingly show that Defendants investigated every allegation and attempted to protect M.D.P.  Although the High School and Middle School Principals at one time discussed imposing

the same punishment on P.A. and M.D.P. if the contact was consensual, the Middle School

Principal exercised her discretion and disciplined M.D.P. only for violating curfew on the band

trip.

The Superintendent and Middle School Principal did not violate M.D.P.'s constitutional

rights.  Moreover, Plaintiff has failed to show a violation of a clearly established constitutional

right.  This claim fails, and the Superintendent and Middle School Principal are entitled to

qualified immunity.  Defendants' motion is granted as to this claim.


IV.     **STATE LAW CLAIM**

Plaintiff's seventh claim is pursuant to the OGTCA against Vian Public Schools for

negligence for the failure to provide adequate supervision and protection for M.D.P. during the

overnight band trip.

As the federal claims have been dismissed, the court declines to exercise supplemental

jurisdiction over the state law claim.  "Section 1367(c) provides conditions where district courts

may decline to exercise supplemental jurisdiction, and the Supreme Court repeatedly has

determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial

discretion." [7] *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165

(10th Cir. 2004) (citations omitted).

---

[7]     The court may decline to exercise supplemental jurisdiction when:
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district
court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining
jurisdiction.
28 U.S.C.A. § 1367.

The Tenth Circuit has stated, "[w]hen all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)) (emphasis added). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). As the court declines to exercise jurisdiction over the remaining state law claim, it is hereby dismissed.

## V.      CONCLUSION

Defendants' motion for summary judgment [Docket No. 44] is hereby GRANTED IN PART. It is GRANTED as to the Title IX and §1983 claims. The court declines to exercise jurisdiction over the remaining state law claim; thus, it is also dismissed. The motions in limine [Docket Nos. 46-49] are MOOT.

**IT IS SO ORDERED** this 6th day of September, 2018.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**